***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of this action.
2. All parties have been correctly designated, and that there is no question as to misjoinder or nonjoinder of parties.
3. On or about January 3, 1996 and May 26, 1999 Defendant-Employer employer employed more than three (3) employees, and the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
4. On or about January 3, 1996 and May 26, 1999 an employee-employer relationship existed between Plaintiff and Defendant-Employer.
5. On or about January 3, 1996 and May 26, 1999 Defendant-Employer was self-insured with claims administered through Sedgwick CMS, Inc.
6. On or about January 3, 1996, Plaintiff was employed by Defendant-Employer at an average weekly wage of $698.06, which yields a compensation rate of $465.40.
7. On or about May 26, 1999, Plaintiff was employed by Defendant-Employer at an average weekly wage of $884.80, which yields a compensation rate of $589.87.
8. On or about January 3, 1996, Plaintiff sustained a compensable injury by accident to his right shoulder. On or about May 26, 1999, Plaintiff sustained a compensable injury by accident and/or aggravation of a pre-existing condition to his arm and shoulder as set forth in the Form 18 filed by Plaintiff on August 31, 1999 and the Form 60 filed by Defendant-Employers on June 27, 2001.
9. Plaintiff has a claim for bilateral carpal tunnel with Industrial Commission File Number 208976 for an injury by accident and/or occupational disease sustained on or about December 13, 2001 that is not being litigated at this time.
10. Plaintiff continues to work for Defendant-Employer.
11. Plaintiff received weekly temporary total disability benefits in the amount of $465.40 from April 23, 1996 through May 26, 1996; from August 27, 1997 through February 12, 1998; from January 15, 1999 through May 16, 1999; and for February 4, 2002 as a result of his injury by accident; as well as temporary partial disability benefits from May 31, 1996 through June 6, 1996 and 48 weeks of permanent partial disability benefits pursuant to a Form 26 approved by the Commission on July 18, 2001.
12. In addition, the parties stipulated into evidence the following: (a) an indexed packet of documents which includes medical records and Industrial Commission Forms; and (b) additional medical records submitted after the hearing on June 4, 2002, August 9, 2002, September 13, 2002 and October 18, 2002.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the deputy commissioner, Plaintiff was forty-six years old, with a date of birth of 23 December 1954. He has a high school diploma. Plaintiff began working for Defendant-Employer in 1987 as a mechanic.
2. Plaintiff's job duties as a mechanic included performing any kind of mechanical work. He testified that his duties included a lot of heavy lifting, pushing, pulling, climbing and crawling.
3. On January 3, 1996, Plaintiff was working on a Chevrolet Camaro with a trainee, who was unable to connect a fuel evaporator line on the back of the gas tank. Plaintiff stepped onto a stool to help the trainee. When he stepped down from the stool, Plaintiff stepped awkwardly onto a plastic shield, which was on the floor. He fell backward onto his back, right shoulder and right side of his neck on a concrete pillar, which was raised approximately five inches off of the floor. Immediately, Plaintiff experienced pain in his back, right shoulder and entire right side. He was unable to move his shoulder.
4. Plaintiff was taken to Med Center One, where the medical staff took x-rays. Plaintiff's right arm was placed in a sling and he was given pain medication. For six months, Plaintiff continued going to Med Center One for physical therapy; however, Plaintiff continued to feel extreme pain during physical therapy. Med Center One referred Plaintiff to Dr. Steven L. Wooten.
5. Dr. Wooten is a board-certified orthopedist who first saw Plaintiff on March 21, 1996. Plaintiff reported pain in his right shoulder. An MRI was needed, but Plaintiff was too large to fit in the MRI scanner; therefore, an arthrogram was taken. The arthrogram revealed a large rotator cuff tear in the right shoulder. Dr. Wooten performed surgery to repair the rotator cuff tear on April 23, 1996.
6. Plaintiff's injury to his right shoulder was accepted as compensable and he was paid temporary total disability in the amount of $465.40 beginning on April 23, 1996.
7. The issue before the Full Commission is whether plaintiff's cervical spine problems are causally related to his compensable injury of January 3, 1996.
8. On May 3, 1996, Plaintiff's right shoulder was improving, but he complained to Dr. Wooten of bruising and tenderness in his neck. Dr. Wooten noted a palpable cord along Plaintiff's back where he had undergone an interscalene block at the time of his surgery to decrease the amount of pain after surgery. On May 24, 1996, Plaintiff reported tightness in his neck. As a result of Plaintiff's complaints, Dr. Wooten believed that Plaintiff's neck problem was not totally resolved. Dr. Wooten recommended that Plaintiff not use his right hand and that he should keep it in a sling while at work.
9. On June 21, 1996, Plaintiff's neurological exam was normal. On July 22, 1996, Plaintiff was improving, but felt something moving in his shoulder. He continued to have pain in his right shoulder. Dr. Wooten believed that Plaintiff might have a cervical disc problem due to the radiation of pain from his neck into his right arm. On September 30, 1996 and November 1, 1996, Plaintiff continued to complain of burning pain in his neck, shoulder, forearm and occasionally, his fingers. On December 12, 1996, Plaintiff complained that the pain in his right neck and shoulder had increased.
10. By January 24, 1997, the pain had spread from Plaintiff's right neck and shoulder to his right ear. On that date, Plaintiff received an injection to his shoulder and an MRI was scheduled for his cervical spine. Again, Plaintiff was unable to fit in the MRI scan due to the width of his shoulders. An arthrogram taken on March 14, 1997 identified a persistent or recurrent rotator cuff tear in Plaintiff's right shoulder. Dr. Wooten referred Plaintiff to Dr. William J. Mallon.
11. Dr. Mallon is board-certified in orthopedics and has a sub-specialty in shoulder and elbow surgery. He treated plaintiff from September 19, 1997 to June 12, 2001. On September 19, 1997, Dr. Mallon indicated in his medical notes that plaintiff had already had a workup on his neck and had received a nerve block in his neck with no significant relief.
12. On August 27, 1997, Dr. Mallon performed surgery for Plaintiff's torn rotator cuff. On October 14, 1997, Plaintiff did not complain about neck pain. On November 25, 1997, Plaintiff complained of neck pain but stated that his neck was not hurting like it did previously. Plaintiff continued to complain of pain in his neck and shoulder.
13. Plaintiff underwent a second surgery by Dr. Mallon on January 15, 1999 to excise approximately a centimeter of his clavicle. This surgery was related to plaintiff's January 3, 1996 injury. Defendants reinstated his temporary total disability benefits on January 15, 1999 and paid plaintiff benefits until May 17, 1999, when plaintiff was due to return to work. After his second surgery, plaintiff had some improvement, but subsequently began complaining of right arm pain again after he reported that he had re-injured himself on May 26, 1999 when he pulled a part off of an air conditioner and experienced a sharp shooting pain in his shoulder.
14. Plaintiff had not previously undergone an MRI due to his size. Dr. Mallon noted that plaintiff's weight had dropped from 340 to 235. On August 5, 1999, Dr. Mallon assigned the following restrictions to Plaintiff: no overhead use of the right arm, no raising right arm above shoulder level, no lifting of more than ten pounds, no ladders and no unrestricted heights.
15. On November 6, 2000, Plaintiff reported to Dr. Mallon that most of his pain was in his neck area. Dr. Mallon had a functional capacity examination (FCE) performed. It revealed myofascial pain around the levator scapula, trapezius and scalene muscles (all muscles in the neck). Plaintiff also demonstrated a positive impingement sign.
16. As the result of an FCE, Dr. Mallon placed Plaintiff on the following restrictions: no lifting over 10 pounds, no overhead work and no overhead lifting. However, the sharp pain in Plaintiff's neck and right shoulder and arm returned. Dr. Mallon believed that there was a nerve problem, but he indicated to Plaintiff that he had done all he could. On June 12, 2001, Dr. Mallon referred Plaintiff to Dr. Lynn Johnson at Greenville Pain Clinic.
17. Dr. Johnson is board-certified in anesthesiology and pain medicine. He first saw Plaintiff on October 1, 2001. Plaintiff complained of a burning pain radiating from his neck to his right shoulder through the fingers on his right hand. A physical exam revealed limited shoulder motion and nerve root irritation either at the wrist and elbow or from the neck. Plaintiff's right arm was cooler than his left arm. Dr. Johnson noted that Plaintiff's pain followed a C6 distribution. Dr. Johnson recommended an EMG and nerve conduction study of Plaintiff's right arm and an MRI of his cervical spine. These studies were not performed because Defendant-Employer did not authorize them.
18. By February 4, 2002, the studies had been completed and revealed multilevel disc protrusions from C3 to C7, a disc herniation at C5-6, a potential herniation at C7-T1 and nonspecific nerve disturbance bilaterally in Plaintiff's wrists. Dr. Johnson believed that there was nerve root irritation there and prescribed a nerve block. However, the nerve block actually made Plaintiff's symptoms worse.
19. An MRI taken in March 2002 revealed cervical herniated discs at C5-6 and C6-7. When asked during his deposition whether Plaintiff's compensable injury on January 3, 1996 caused the herniated cervical discs, Dr. Mallon responded, "I guess it could have."
20. On April 2, 2002, Plaintiff reported that the prescribed Neurontin improved his pain and helped him sleep better. No changes were made in his medication. On May 2, 2002 and June 3, 2002, Plaintiff stated that the Neurontin was less effective. Dr. Johnson prescribed Oxycontin on June 2, 2002. On June 17, 2002, Plaintiff received a cervical epidural steroid injection. When asked during his deposition whether Plaintiff's herniated cervical discs were caused by his January 3, 1996 injury, Dr. Johnson replied, "It could or might have."
21. Dr. Johnson referred Plaintiff to Dr. Kurt Voos. Dr. Voos is board-eligible in orthopedic surgery and first saw Plaintiff on March 11, 2002. Plaintiff complained of shooting pain, numbness and tingling in the right shoulder, forearm, thumb, and index finger and reported his pain to be an 8 on a scale of 1 to 10. Plaintiff reported to Dr. Voos that he was injured when he was climbing down a ladder and stepped on a Camaro part, fell, and landed on his shoulder and upper back. A physical examination revealed tenderness to palpation throughout Plaintiff's neck and limited range of motion in the right shoulder and neck. A previous MRI revealed herniated discs at C5-6 and C6-7. Dr. Voos's impression was cervical radiculopathy. He recommended a full course of nerve blocks. However, Dr. Voos did not see Plaintiff after the March 11, 2002 visit. Dr. Voos opined that he would need to see Plaintiff again before he could determine whether he was at maximum medical improvement.
22. When asked whether Plaintiff's cervical disc herniations could or might have been caused by the January 3, 1996 injury, Dr. Voos replied, "I think it could have been, yes." Based on Plaintiff's medical records, Dr. Voos opined that it was likely that Plaintiff's cervical conditions are related to his January 3, 1996 injury.
23. As of the date of the hearing before the deputy commissioner, Plaintiff was working in the position of team leader and general mechanic. His job duties included dispersing work to other technicians. Frequently, Plaintiff dispersed work to himself and covered when technicians were out. Thus, Plaintiff frequently did not work within his restrictions. Plaintiff testified that he had reported to Barry, his supervisor, that his right shoulder was hurting while at work, but Plaintiff's supervisor did not pay attention to his complaints.
24. Based on the greater weight of the evidence, the Full Commission finds that Plaintiff's cervical disc problems are causally related to his January 3, 1996 injury by accident.
25. Defendants have paid temporary total disability compensation to Plaintiff pursuant to a Form 60 admission of liability and permanent partial disability compensation for 48 weeks pursuant to a Form 26 approved by the Industrial Commission on July 18, 2001.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On or about January 3, 1996, Plaintiff sustained a compensable injury by accident to his right shoulder. On or about May 26, 1999, Plaintiff sustained a compensable injury by accident and/or aggravation of a pre-existing condition to his arm and shoulder as set forth in the Form 18 filed by Plaintiff on August 31, 1999 and the Form 60 filed by Defendant-Employers on June 27, 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's cervical spine herniations are causally related to his compensable injury by accident of January 3, 1996 and May 26, 1999 aggravation of his injury.
3. Defendants are obligated to pay Plaintiff's medical expenses resulting from his compensable injury by accident, including treatment for his neck injuries, for so long as such treatment may be reasonably required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
4. Plaintiff is entitled to be rated for any permanent partial disability he may have sustained to his cervical spine.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff temporary total disability compensation at the rate of $465.40 per week for any days missed from work as a result of his cervical disc herniations and related cervical conditions.
2. Defendants shall pay for all medical expenses incurred or to be incurred by Plaintiff as a result of his compensable cervical disc condition so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability.
3. Plaintiff's attorney is awarded a reasonable fee in the amount of 25% of the compensation due Plaintiff pursuant to this award when the compensation owed Plaintiff is determined.
4. Plaintiff's right to temporary total disability and/or permanent partial disability relating to his cervical herniations and related cervical conditions are RESERVED for subsequent determination. Either party may request a hearing to determine the amount of compensation due Plaintiff by filing a Form 33 Request for Hearing.
5. Defendant shall pay the costs.
This the ___ day of February 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER